Alexander Slater v. Commissioner.
Slater v. Commissioner
Docket No. 30661.
United States Tax Court
1952 Tax Ct. Memo LEXIS 287; 11 T.C.M. (CCH) 241; T.C.M. (RIA) 52073; March 20, 1952
*287 Petitioner performed legal services covering 1929 to 1941. He negotiated a settlement of his clients' case pursuant to which $90,550 was paid to him in 1941 and $90,250 was placed in escrow in 1941 and was paid to him in 1942 upon delivery of releases by his clients. Petitioner's fee was 43 1/3 per cent of the settlement. Held, petitioner did not receive in 1941 at least 75 per cent of his compensation for the services and may not apply section 107, Internal Revenue Code, in computing his tax attributable to that compensation. Held, also, petitioner is not entitled to deduct as a loss an amount paid to reimburse a client for a loss sustained on an investment. Herman Lubin, Esq., for the petitioner. Joseph F. Lawless, Jr., Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies of $7,405.39 for 1941 and $12,960.62 for 1943. The issues presented are whether petitioner is entitled to apply section 107 of the Internal Revenue Code in computing his tax attributable to a fee received for certain legal services, and whether he is entitled to a deduction of $1,000 as a loss on a personal guaranty. Findings of Fact Petitioner is a resident of New York, New York. He filed income tax returns for 1941, 1942 and 1943 on the cash basis with the collector of internal revenue for the second district of New York. He has been engaged in the practice of law since 1915. Under date of January 12, 1929, he *289 was retained by the Gold Coast Farmers' Association, an unincorporated association of Nsawam Gold Coast Colony, British West Africa to prosecute claims in the courts of New York State or the United States for moneys due the Association. The agreement contemplated commencement and prosecution of litigation on behalf of the Association for damages for the conversion of cocoa beans of which the Association and its members alleged they were fraudulently deprived. Petitioner accepted the retainer in writing under date of March 14, 1929, instuted such action in the Supreme Court of the State of New York, County of New York on December 20, 1929, and the litigation continued until November 7, 1941. Petitioner rendered services in this litigation during each of the years from the commencement of the litigation until its settlement by stipulation and agreement. The retainer provided: "* * * the said undersigned do hereby agree to have Gold CoastFarmers' Association pay said Alexander Slater, as and for his compensation for such services, one third of any recovery whether the same be through suit settlement or otherwise. It being understood however, in the event there is no recovery, said *290 Alexander Slater, shall be entitled to no compensation." At a later date payment to petitioner of an additional 10 per cent of any recovery was authorized by the Association. In September 1941 petitioner received an offer of settlement and cabled Mr. Ayew, the president of the Association: "HAVE NEGOTIATED SETTLEMENT ONE HUNDRED EIGHTY THOUSAND FIVE-HUNDRED DOLLARS YOUR SHARE AFTER DEDUCTING MY FEE AND EXPENSES IS TWENTY THOUSAND POUNDS IMMEDIATE ACCEPTANCE IMPERATIVE DUE WAR CONDITIONS STOP CABLE ME AUTHORITY THROUGH BARCLAYS OR BBWA AUTHORIZING ME DO ALL THINGS NECESSARY EFFECTUATE SETTLEMENT AFORESAID THEN YOUR SHARE WILL BE IMMEDIATELY DEPOSITED EITHER BANK PENDING DELIVERY YOUR RELEASES. MAILING STATEMENT MY EXPENSES." Mr. Ayew replied as follows under date of September 22, 1941: "REFERENCE YOUR TELEGRAM 11TH INSTANT ENDEAVOUR OBTAIN SETTLEMENT FOR 200000 DOLLARS DUE HEAVY EXPENSES ON DEPOSITIONS WHICH WAS MAILED 30TH ULTIMO STOP IN CASE OF DIFFICULTY DO ALL THINGS NECESSARY OUR BEHALF EFFECTUATE FINAL SETTLEMENT AND DEPOSIT TOTAL PROCEEDS STANDARD BANK NEW YORK PENDING RECEIPT STATEMENT YOUR EXPENSES CONFIRMATION LETTER FOLLOWS -" In reply, petitioner cabled Ayew *291 under date of September 23, 1941: "ABSOLUTELY IMPOSSIBLE OBTAIN ANY INCREASED OFFER OR TO PERMIT WITHHOLDING MY FEES AND EXPENSES CABLE IMMEDIATELY AUTHORIZATION THROUGH BANK AS PREVIOUSLY REQUESTED NET PROCEEDS EIGHTY THOUSAND EIGHT HUNDRED DOLLARS WILL BE DEPOSITED STANDARD BANK YOUR CREDIT SUBJECT RECEIPT RELEASES MY CHARGES BEING FORTYTHREE ONE THIRD PERCENT PLUS EXPENSES TWENTY-ONE THOUSAND FIVE HUNDRED DOLLARS MY ACTUAL EXPENSES CONSIDERABLY GREATER." On October 4, 1941, petitioner cabled the Bank of British West Africa: "FOR AUTHENTICATION PURPOSES HAVE AYEW CABLE THROUGH YOU TO STANDARD BANK AS FOLLOWS: SLATER AUTHORIZED TO SETTLE CASE AGAINST WILLARD HAWES AND OTHERS FOR ONE HUNDRED EIGHTY THOUSAND FIVE HUNDRED DOLLARS DEPOSITING EIGHTY THOUSAND EIGHT HUNDRED DOLLARS STANDARD BANK PAYABLE GOLD COAST FARMERS ASSOCIATION LTD. ON DELIVERY TO DEFENDANTS OF GENERAL RELEASES BALANCE SETTLEMENT PAYABLE SLATER FOR FEES AND EXPENSES STOP UPON RECEIPT THEREOF WILL CABLE FORM OF RELEASES AND INSTRUCTIONS THEIR EXECUTION." Authority was cabled on October 16, 1941 to petitioner to settle on the terms outlined. Petitioner entered into an agreement of settlement under date of Ocober 31, 1941, which *292 recited: "This agreement made this 31st day of October, 1941, by and between GOLD COAST FARMERS ASSOCIATION, LTD., a corporation duly organized and existing under and by virtue of the laws of the Gold Coast Colony, British West Africa; GOLD COASTFARMERS' ASSOCIATION, an unincorporated association, with its principal office and place of business at Accra, British West Africa; JOHN K. AYEW, of Mampong, Akwapim Province, Gold Coast Colony, individually and as president of said GOLD COASTFARMERS' ASSOCIATION; and ALEXANDER SLATER, Esq., of 19 West 44th Street, Borough of Manhattan, New York, as attorney for all of said parties; all hereinafter referred to as 'parties of the first part'; and WILLARD HAWES & CO., INC., AFRICAN COCOA MAHOGANY CO., INC., REUBEN ARKUSH and MAURICE C. HILL, all hereinafter referred to as 'parties of the second part'. "WITNESSETH: "WHEREAS, there is now pending, and there has been pending since 1929, in the Supreme Court, New York County, a certain action now entitled 'JOHN K. AYEW, as President of the Gold Coast Farmers Association and Gold CoastFarmers' Association, Ltd., Plaintiffs, against AFRICAN COCOA & MAHOGANY CO., INC., WILLARD HAYES & CO., *293 INC., REUBEN ARKUSH, MAURICE C. HILL, AMELIA ARKUSH, WILLIAM F. TROTMAN, LEWIS JACKSON and DANIEL SHAW, Defendants', which action is based upon certain transactions in the years 1924 and 1925, and "WHEREAS, the parties to said action have agreed to settle and compromise said action and any and all claims of the parties of the first part against the party of the second part, and any and all claims of the parties of the second part against the parties of the first part, for and in consideration of the payment of the sum of $180,500 to the parties of the first part, and "WHEREAS, the defendants desire to procure general releases from the parties of the first part now located in British West Africa, in order to complete said settlement, and "WHEREAS, Alexander Slater, Esq., has represented to the parties of the second part and warranted to them, and does hereby represent and warrant his authority to make and complete said settlement on behalf of the parties of the first part, and to receive on their behalf the payments hereinafter provided for, "NOW, THEREFORE, the parties hereto, and do hereby settle and adjust any and all of the claims of the parties of the first part against *294 the parties of the second part, and any and all claims of the parties of the second part or any of them against the parties of the first part, upon the following terms and conditions: "1. The parties of the second part shall pay to the parties of the first part the sum of $180,500, in the manner and upon the conditions hereinafter set forth. "2. The parties hereto shall enter into a stipulation of settlement and adjustment in the above entitled action, providing for a dismissal upon the merits against all of the defendants of the first three causes of action set forth in the second amended complaint; a dismissal upon the merits of the fourth cause of action against all of the defendants, other than those who are parties hereto, and a dismissal upon the merits of the counterclaim in the answer of the defendant, AFRICAN COCOA & MAHOGANY CO. INC. in said action. Said stipulation shall also provide for an order directing the entry of judgment in favor of the plaintiffs and against the defendants, African Cocoa & Mahogany Co., Inc., Willard Hawes & Co., Inc., Reuben Arkush, and Maurice C. Hill, on the fourth causes of action in the second amended complaint, as amended by stipulation, *295 in the sum of $90,250. The amount of said judgment of $90,250 represents one-half of the total amount payable under the settlement between the parties hereto. "3. The parties of the second part agree to pay said amount of $90,250 forthwith upon the entry of said judgment, to ALEXANDER SLATER, ESQ., upon receipt from said Alexander Slater, Esq. of a duly executed satisfaction of said judgment. "4. The parties of the first part agree to execute and deliver to the parties of the second part general releases of any and all claims of the parties of the first part against any and all of the parties of the second part and the additional defendants who have appeared in said action, which releases shall be in the form annexed hereto. Simultaneously with the delivery of the said general releases, the parties of the first part agree to deliver to the parties of the second part duly certified copies of resolutions of the Gold Coast Farmers Association, Ltd., and Gold CoastFarmers' Association, authorizing and ratifying the making of this agreement and the payments made thereunder, as well as the execution of said general releases. Said releases and authorization shall be acknowledged in *296 the form customary in the Gold Coast Colony, before either the Registrar of the Supreme Court of the Gold Coast Colony, a District Commissioner, or an Assistant District Commissioner. Simultaneously with the delivery of said releases, the parties of the second part shall deliver to the parties of the first part duly executed general releases. "5. The parties of the second part agree to pay to ALEXANDER SLATER, ESQ. on behalf of the parties of the first part, the balance of said settlement, to wit, the sum of $90,250 on January 2nd, 1942, provided there shall be delivered to Karelsen & Karelsen, as attorneys for the defendants, the aforesaid duly executed general releases from the parties of the first part to the parties of the second part, together with the aforesaid resolutions. In the event that said general releases and resolutions are not delivered by January 2nd, 1942, said sum shall be paid upon the subsequent delivery thereof to Karelsen & Karelsen. "6. In the event that the aforesaid releases and resolutions from the parties of the first part are ready for delivery to the parties of the second part prior to January 2nd, 1942, the parties of the first part may deliver said *297 releases and resolutions to Karelsen & Karelsen to hold in escrow for the defendants, and upon such delivery in escrow of said releases and resolutions, the parties of the second part shall pay or cause to be paid to Alexander Slater, Esq., on behalf of the parties of the first part, the sum of $40,250; deposited as hereinafter provided for, with the STANDARD BANK OF SOUTH AFRICA, which deposit is made at the request and at the risk of the parties of the first part. The balance under this settlement, namely, $50,000., shall be paid on January 2, 1942, whereupon the escrow delivery of the releases shall be terminated. "7. The parties of the second part, in order to secure the full payment of the moneys provided for herein, agree that immediately upon the entry of the aforesaid order for judgment, they will do each of the following: a) deposit the sum of $40,250 in escrow with the STANDARD BANK OF SOUTH AFRICA, 67 Wall Street, Borough of Manhattan, City of New York, which sum shall be kept on deposit for the term hereinafter provided. b) deposit with KARELSEN & KARELSEN securities consisting of bonds traded on the New York Stock Exchange in the current market value of at least *298 $50,000, which value shall be attested to by Karelsen & Karelsen." * * *
Petitioner, by notice, moved the Supreme Court for an order and on November 7, 1941, an order was entered dismissing on the merits the first three causes of action except as to one defendant, dismissing on the merits a counterclaim of African Cocoa & Mahogany Co., Inc., and directing entry of judgment in favor of the plaintiffs and against certain of the defendants in the sum of $90,250. On that date petitioner received from Karelsen & Karelsen two checks dated October 31, 1941, payable to Alexander Slater, attorney, one made by Reuben Arkush in the amount of $40,000 and one made by Willard Hawes & Co., Inc., in the amount of $50,250. He also received $300 on account of delays in the settlement. Upon this payment he caused satisfaction of the judgment to be entered. On November 7, 1941, Willard Hawes & Co., Inc., issued two checks to the Standard Bank of South Africa in the amounts of $15,000 and $25,250. This Bank issued a receipt stating: "RECEIPT IS Hereby acknowledged, from KARELSEN & KARELSEN, Esqs., 230 Park Avenue, New York City, as attorneys, of the sum of Forty Thousand Two Hundred Fifty and *299 no/100 ($40,250.00) Dollars, in the form of uncertified cheques, subject to collection proceeds, to be held by the undersigned subject to the written instructions of said Karelsen & Karelsen signed by any one of the members of the said firm whose names appear on the signature card delivered to the undersigned." On November 22, 1941, Karelsen & Karelsen wrote petitioner: "This is to advise you that there has been deposited with me $50,000 worth of securities in the shape of New York City stock, in accordance with our agreement re Ayew v. African Cocoa & Mahogany Co. Inc., etc." Petitioner endorsed the Arkush check for $40,000 to the Standard Bank of South Africa and gave his personal check for $703, whereupon the Bank on November 8, 1941, cabled 10,000 pounds to petitioner's clients at an exchange rate of $4.0703. On June 26, 1942, petitioner acknowledged receipt of checks of that date drawn by Reuben Arkush in the amount of $40,000 and by Maurice C. Hill in the amount of $10,000 as representing full payment to him, as attorney for Ayew pursuant to the agreement of October 31, 1941, except for the escrow deposit held by the Standard Bank of South Africa. On June 27, 1942, the *300 $40,250 held by that Bank was released to petitioner. In July 1942, he gave the Bank his personal check for $150 and authorized the Bank to remit $40,400 to his client. Rachel Teneheiser was a client of petitioner for many years. At one time she loaned $5,000 to a real estate corporation at petitioner's suggestion. The corporation subsequently lost its property through foreclosure. In 1941 petitioner paid her $1,000. He claimed a deduction on his return for this amount as "loss on a personal guaranty." Opinion The principal issue is whether petitioner is entitled to apply section 107 of the Internal Revenue Code in computing the tax attributable to the fee he received for services in the Gold CoastFarmers' Association litigation. Section 107 limits the tax attributable to compensation for services performed over a period of several years received or accrued under certain stated conditions. There is no dispute here as to the period covered by the services and it is conceded that the compensation was received after completion of the services. The respondent determined that at least 75 per cent of the compensation was not received in 1941, and that, therefore, *301 section 107 was not applicable. We deal first with petitioner's argument that section 107 is applicable even if the principal part of the compensation was not received in 1941, in support of which petitioner cites Slough v. Commissioner, 147 Fed. (2d) 836, and Bergh v. Pedrick, 168 Fed. (2d) 663. Each of those cases dealt with section 107 prior to its amendment by section 139 of the Revenue Act of 1942. [1] As so amended, there is incorporated a requirement that the major percentage of the fee be received or accrued "In one taxable year," the percentage being 75 as to taxable years beginning in 1941 and 80 as to taxable years beginning after 1941. The Slough and Bergh cases, therefore, are not controlling here where the compensation was received in taxable years subsequent to 1940. *302 It is petitioner's further contention, and he has the burden of proving, that he received in 1941 at least 75 per cent of his total compensation for the services. In settling the case for $180,500, he earned a fee of 43 1/3 per cent or $78,216.67 and claimed reimbursement for expenses of $21,500, a total of $99,716.67. On November 7, 1941, he received $90,550, including a $300 extra payment to compensate for delay in settlement, and cash and securities to the value of $90,250 were placed in escrow for delivery to him in 1942 when releases from his clients were to be presented. He remitted $40,703 to his clients in 1941. Respondent says that since petitioner retained not more than $50,000 in 1941, he received less than 75 per cent of his total compensation in that year and section 107 is not applicable. Petitioner contends that the entire amount received in 1941 was his, and that what he sent to his clients was in effect a loan or advance of his own funds. The issue, therefore, turns upon the status of the amount remitted by petitioner to his clients in 1941. Petitioner says that the purpose of sending the money was to induce his clients to hasten the execution and delivery of the *303 releases and effect an early closing of the case. He indicates that counsel for the defendants suggested this and that he consented with some reluctance. One of the counsel for the defendants testified that his clients were willing to pay half the amount of the settlement in reliance upon petitioner's implied authority to act for his clients, but were unwilling to pay the remainder until releases were secured, and that defense counsel remarked that if petitioner would send some of the money to his clients it should help in expediting return of the releases. Petitioner also points to the wording of the cables as providing for his own payment first, with the clients' share to be deposited in escrow until releases were sent in. He refers to expressions such as: "YOUR SHARE WILL BE IMMEDIATELY DEPOSITED * * * PENDING DELIVERY YOUR RELEASES. * * *
IMPOSSIBLE * * * TO PERMIT WITHHOLDING MY FEES AND EXPENSES * * * NET PROCEEDS EIGHTY THOUSAND EIGHT HUNDRED DOLLARS WILL BE DEPOSITED STANDARD BANK * * * SUBJECT RECEIPT RELEASES * * *
BALANCE SETTLEMENT PAYABLE SLATER FOR FEES AND EXPENSES." He also refers to the wording of the settlement contract wherein it was provided: *304 "The parties of the second part agree to pay said amount of $90,250 forthwith upon the entry of said judgment, to ALEXANDER SLATER, ESQ., upon receipt from said Alexander Slater, Esq. of a duly executed satisfaction of said judgment. * * * "The parties of the second part agree to pay to ALEXANDER SLATER, ESQ. on behalf of the parties of the first part, the balance of said settlement, to wit, the sum of $90,250 on January 2nd, 1942, * * *" He argues that the difference in wording is significant, that it shows an agreement to pay the first half to him, personally, and the second half to him "on behalf of" his clients. We think petitioner has not met the burden of proving that respondent erred. The language of the cables and of the settlemnt contract does not necessarily bear out his contentions. Nowhere is it expressly provided that petitioner shall keep as his own the first proceeds of the settlement. In fact the first cable from Ayew instructed petitioner to "* * * DEPOSIT TOTAL PROCEEDS STANDARD BANK NEW YORK PENDING RECEIPT STATEMENT YOUR EXPENSES * * *" This order to deposit total proceeds apparently contemplated settlement between petitioner and his clients after the *305 case was closed, with division of the proceeds after approval of the expense statement. It is true the settlement was not effected in that manner, but this gives some intimation of the clients' attitude. Even if petitioner originally intended to deposit his clients' share in escrow and take his share immediately, the settlement was not made in accordance with that plan. The settlement agreement did not provide for deposit of $80,800 payable to the Gold Coast Farmers' Association, as was proposed in the cables, but for payment of the first half of the total sum to petitioner upon receipt of a satisfaction of the judgment and payment to petitioner, "on behalf of the parties of the first part," of which he was one, of the second $90,250. Part of this second payment was his in any event. As to each half he was the responsible agent for the "parties of the first part." The defendants were not parties to the arrangements between petitioner and his clients and were not interested in separating the settlement into two funds, one for petitioner and one for his clients. Petitioner's assertion that the 10,000 pounds he sent his clients in 1941 was a loan, rather than a partial payment of the *306 settlement is not supported by the evidence. There is no indication that it was treated by his clients as a loan or that petitioner ever advised them that he was advancing his own funds to them. No note or other evidence of indebtedness was taken or asked for. Petitioner asserts that he had authority to keep all the first half of the settlement for himself. Whether or not he had any such authority, what petitioner actually did is controlling, not what he might have done. What happened is that after receiving half the settlement, petitioner sent his clients half of their money. When the other half was turned over to him, in June 1942, he sent the other half of the clients' share to them. This is the reasonable and natural interpretation of the facts. What the clients received was theirs, not petitioner's subject to recoupment by him after the releases were delivered. The interpretation urged by petitioner is strained and not normal. Approximately half the amount of petitioner's fees and expenses was retained by him out of the amount received in 1941 and half was collected by him in 1942. Regardless of whether the expense reimbursement is deemed to have been received in one year or the *307 other, the required percentage of the total compensation was not received in either year and section 107 is not applicable. Respondent is sustained. Petitioner has not shown error in respondent's disallowance of the amount of $1,000 paid Rachel Tenenheiser. Accepting petitioner's description of the transaction, this was not a business loss incidental to petitioner's practice of law, and petitioner was not in the business of guaranteeing or insuring loans. There is no showing that Rachel Tenenheiser made the investment in reliance upon petitioner's guaranty or that the gauranty was given prior to the loss of the property by the borrower. It appears that this was a voluntary underwriting, after debt became worthless, of an obligation of another. Under these circumstances, the payment is not deductible under section 23 (k) (4) as a non-business bad debt. Whether petitioner made the payment to retain a valued client, or as a kindness, or out of a sense of moral obligation to one who had sustained a loss from following his advice, it is not an ordinary or necessary business expense, nor a loss deductible under section 23 (e) (1). Friedman v. Delaney, 171 Fed. (2d) 269, *308 (1948-C.A. 1) cert. den. 336 U.S. 936. We hold against petitioner on this issue. Decision will be entered for the respondent. Footnotes
1. SEC. 139, Revenue Act of 1942. (a) Section 107 is amended to read as follows: SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE. (a) Personal Services. - If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual. * * *
(b) The amendment made by subsection (a) shall be applicable to taxable years beginning after December 31, 1940, but with respect to a taxable year beginning after December 31, 1940, and not beginning after December 31, 1941, the period specified in such subsection shall be sixty months in lieu of thirty-six months, and the percentage specified in such subsection shall be 75 per centum in lieu of 80 per centum.↩